# IN THE COURT OF APPEALS OF IOWA

No. 20-0057
Filed April 15, 2020

IN THE INTEREST OF D.G. and M.L.,
Minor Children,

J.L., Mother,
        Appellant.

_____

Appeal from the Iowa District Court for Polk County, Thomas Mott, Judge.

The mother appeals the termination of her parental rights to two of her children. **AFFIRMED.**

Alexandra M. Nelissen of Advocate Law, PLLC, Clive, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Magdalena Reese of Juvenile Public Defender, Des Moines, attorney, and guardian ad litem for minor children.

Considered by Bower, C.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

The mother appeals the termination of her parental rights to two[1] of her children, D.G., born in 2013, and M.L., born in 2018.[2]  The mother purports to challenge whether the children could be returned to her care at the time of the termination hearing in December 2019, if termination is in the children's best interests, and whether a permissive factor in section 232.116(3) precludes termination.  Yet the mother did not testify or present evidence at the termination hearing.  While she did not consent to the termination, she did nothing to rebut the evidence for termination the State presented—just several exhibits admitted by the court.[3]  The juvenile court referenced minimal fact findings in its order terminating the mother's parental rights.  That being said, there were no factual or credibility issues in dispute.

First, we question whether the mother waived her right to challenge at least some issues she now brings up on appeal.  Not because she did not present

---

[1] The mother has another child, C.L., who is over the age of ten and is not at issue in this appeal.  The State initially petitioned to terminate the mother's rights to C.L. as well, but, at the termination hearing, the State orally moved to remove the oldest child from the petition.  The State asked the court to set a separate hearing on permanency for the oldest child and to establish a guardianship in the maternal aunt—with whom C.L. was already living—rather than terminate the mother's parental rights.  *See* Iowa Code § 232.104(2)(d)(1) (2019).  The Iowa Department of Human Services (DHS) and the guardian ad litem joined this request.  The court clarified it would note the change in the permanency goal for C.L. and schedule a hearing.  No parent's rights were terminated as to C.L.

[2] The fathers' parental rights were also terminated.  Neither father appeals.

[3] The termination proceedings were originally scheduled for September 16 and then October 25.  Over issues about a conflict of interest with at least one of the attorneys representing a parent, the proceedings were ultimately continued until December 12.  But the exhibits entered at the December 2019 termination hearing, such as progress reports from the family safety, risk, and permanency provider and the social worker's report to the court, are only current through early October 2019.

evidence—we acknowledge she could still challenge the juvenile court's conclusions without presenting independent evidence—but because of her attorney's statements made on the record, which conveyed that the mother knew she could not resume care of the children. The mother's attorney stated:

> Most recently met with her yesterday evening. At that point in time, we had conversations regarding the termination, and she understands what her position is at this point in time. She does not believe that she can consent to a termination, but certainly is not offering any independent evidence.
>
> She loves her children deeply and has some pretty significant concerns, but understands kind of where we're at with respect to a termination of parental rights.
>
> . . . .
>
> With respect to the termination, as I stated, I commend [the mother], quite frankly. I think that I have many clients who come in kicking and screaming when they know what they have done or have not done. And I understand that it is extremely difficult to put your pen to paper—your name to paper and indicate that you are, in her opinion, giving up on her children. But to be able to recognize where we're at and not draw this out for the children, I think, is something that should be commended on her behalf.

"[T]he mother cannot be heard on appeal to complain about a ruling she agreed was appropriate." *In re H.S.*, No. 17-1902, 2018 WL 540998, at *1 (Iowa Ct. App. Jan. 24, 2018); *see also Jasper v. State*, 477 N.W.2d 852, 856 (Iowa 1991) (noting a litigant "cannot deliberately act so as to invite error and then object because the court has accepted the invitation").

Even if the mother has preserved a challenge to whether the children could be returned to her care at the time of the termination hearing, *see* Iowa Code § 232.116(1)(f)(4), (h)(4); *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010), we have little trouble determining they could not. The children were removed in July 2018 after M.L. tested positive for methamphetamine at birth. The mother admitted using methamphetamine during her pregnancy. And she continued to use it,

seemingly up until the December 2019 termination proceedings. Over the course of the case, the mother had some negative drug tests, but she also missed many tests and never completed substance-abuse treatment. When she last entered treatment, in September 2019, she reported using methamphetamine daily. She left treatment less than three weeks later against the advice of staff. The report from the mother's discharge notes that "she lacks personal accountability and the motivation to change." And at discharge, with her severe alcohol dependency, the mother revealed doubts she could stay sober if her rights to her children were terminated. The mother also experienced serious issues with depression during the case—a barrier the mother struggled to overcome. DHS tried to help the mother address her mental health with services for therapy and medication management, but she was unable or unwilling to follow through with those services consistently.

Now the mother argues termination of her rights to these children are not in the children's best interests because her rights were not terminated to C.L. and these children will be harmed by that knowledge.[4] Knowing their sister continues

---

[4] The mother also claims termination is not in these children's best interest because "the children will be deprived of unique important cultural opportunities by being placed outside of an African American home or a culturally aware home." We have little information about the family with whom the children were placed at the time of the termination proceedings. The maternal great grandmother cared for the children for much of the pendency of the case, but the children moved into the home of the great grandmother's neighbors in September 2019 due to the grandmother's health issues. We know nothing else about the neighbor family. And it is unclear where the children would be placed after the termination of the mother's parental rights. As part of the termination order, the juvenile court ordered that the custody of the children was to transfer to DHS for an appropriate placement. Nor have we found in the record where the mother raised this concern to the juvenile court. We do not consider this complaint.

to have a relationship with the mother may cause these children some emotional turmoil. But our review of best interests requires us to focus on the children's "safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2); *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (providing that the court must use the framework of section 232.116(2) rather than "using its own unstructured best-interest test"). The mother could not provide stability and a safe home for the children—not now and possibly not in the future. Termination of her parental rights is in D.G.'s and M.L.'s best interests. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying "a child's safety and his or her need for a permanent home as the defining elements in a child's best interests").

Finally, the mother argues section 232.116(3)(b) and (c) should be applied to save the parent-child relationship. We refuse to consider these claims. The parent has the burden to prove an exception to termination, *see In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018), and as we noted before, the mother did not present any evidence nor make any argument in favor of the preservation of her rights. She did not even attempt to meet this burden at the termination proceedings, and she cannot try now on appeal for the first time. *In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994) ("As a general rule, an issue not presented in the juvenile court may not be raised for the first time on appeal.").

We affirm the termination of the mother's parental rights.

**AFFIRMED.**